**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JEAN E. RABBITT & KEVIN AGUILAR. | Criminal Action No. 23-320 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

     This matter comes before the Court upon Defendant Jean E. Rabbit's ("Defendant" or "Rabbitt") omnibus motion (ECF No. 57). The United States of America (the "Government") opposed (ECF No. 66), and Rabbitt replied (ECF No. 67). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Civil Rule 1.1. For the reasons set forth herein, Rabbitt's omnibus motion is granted in part, denied in part.

## I.    BACKGROUND

### A.    The Indictment

     On April 19, 2023, Rabbitt and Kevin Aguilar ("Aguilar") (collectively, "Defendants") were indicted in the District of New Jersey by a grand jury for the following Counts: (1) Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 (Count 1); (2) Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Counts 2-8); (3) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 9); (4) Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 10-12); (5) Conspiracy to Engage in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1956(h) (Count 13); (6) Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18

U.S.C. §§ 1957 and 2 (Counts 14, 15[1]); and (7) Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Count 16). (Indictment ¶¶ 1-24, ECF No. 37.) Rabbitt was also indicted for False Statements in a Loan Application, in violation of 18 U.S.C. §§ 1014 and 2 (Count 17). (Indictment ¶ 24; *see also* Gov't's Opp'n Br. 4.)

**B.      The Instant Motion[2]**

On May 1, 2024, Rabbitt filed an omnibus motion raising several requests. (Def.'s Moving Br., ECF No. 57.) Specifically, Rabbitt seeks to: (1) dismiss Counts 1-9 and 13 of the Indictment "for failure to state an offense and failure to charge essential elements"; (2) sever Rabbitt's trial from Aguilar's to protect Rabbitt's Sixth Amendment Rights; (3) require the Government to disclose unredacted copies of already produced discovery or produce a privilege log of the same; (4) require the Government to disclose all *Brady* material in advance of trial; and (5) be permitted to file any additional motions or join any of Aguilar's motions as necessary. (*Id.*)

The Government opposed (Gov't's Opp'n Br., ECF No. 66) and Rabbitt replied (Def.'s Reply Br., ECF No. 67).

## II.      DISCUSSION

### A.      Motion to Dismiss Counts 1-9 and 13

#### 1.      *Legal Standard*

An indictment is sufficient if it is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) ("[D]etailed allegations . . . are not contemplated

---

[1] Count 14 is specific to Rabbitt only, and Count 15 is specific to Aguilar only. (Indictment ¶¶ 17-20.)

[2] Aguilar did not request to join in on Rabbitt's omnibus motion.

by [Federal] Rule [of Criminal Procedure] 7(c)(1)."[3]). Nevertheless, a defendant may move to dismiss an indictment for "lack of specificity" or "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). In the Third Circuit, an indictment is facially sufficient to warrant a trial on the merits if it:

> (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Vitillo*, 490 F.3d 314, 321 (3d. Cir 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)). Accordingly, an indictment that recites the statutory language of the offense charged is adequate "so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Rankin*, 870 F.2d at 112; *see also Resendiz-Ponce*, 549 U.S. at 109 ("[A]n indictment parroting the language of a federal criminal statute is often sufficient."); *but see Russell v. United States*, 369 U.S. 749, 765 (1962) ("Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." (citations omitted)). Yet, "such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990) ("In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment.").

---

[3] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Criminal Procedure.

### 2.      *Motion to Dismiss Count 1*

First, Rabbitt argues that Count 1 of the Indictment, charging conspiracy to commit bank fraud, must be dismissed because: "(1) it fails to state an offense by charging conspiracy to attempt bank fraud, which is not a crime under a proper reading of the relevant statutes; (2) it omits the materiality element of bank fraud; and (3) it omits the intent-to-defraud element of [§] 1344(1)." (Def.'s Moving Br. 3.) The Court addresses each in turn.

### a.      **Failure to State an Offense**

Rabbitt asserts that Count 1 improperly charges her "not only with conspiring to commit bank fraud, but also conspiring to *attempt* bank fraud" which is "not a cognizable offense." (*Id.* at 4.) Specifically, Rabbitt states that § 1349 covers conspiracies and attempts, not *conspiracies to attempt* offenses or *attempts to conspire* to commit such offenses. (*Id.* at 5.) Rabbitt concedes that she is unaware of any caselaw on the particular question, but offers out-of-jurisdiction cases in other statutory contexts for support. (*Id.* at 5-6.)

As an initial matter, the Court clarifies that Count 1 charges Defendants with conspiracy to commit bank fraud. (Indictment ¶¶ 1-4.) In fact, plain reading of the Indictment reveals that Defendants are charged with *succeeding* in their conspiracy to commit bank fraud, which led to approval of approximately $3.3 million in PPP loans. (Indictment ¶¶ 2-4.) *See United States v. Menendez*, 137 F. Supp. 3d 688, 692 (D.N.J. 2015), *aff'd*, 831 F.3d 155 (3d Cir. 2016) ("[C]riminal indictments are to be read as a whole and interpreted in a common sense manner." (quoting *United States v. Lee*, 359 F.3d 194, 209 (3d Cir. 2004))).

Taking a closer read, the term "attempt" is included in the Indictment to track the statutory language. Conspiracy to commit bank fraud is prohibited by 18 U.S.C. § 1349, which provides that "[a]ny person who *attempts* or conspires to commit any offense under this chapter shall be

4

subject to the same penalties as those prescribed for the offense . . . ." 18 U.S.C. § 1349. To prove

bank fraud, which is an offense under the relevant chapter,

> the evidence must establish beyond a reasonable doubt that a
> defendant "knowingly execut[ed], or *attempt*[*ed*] to execute, a
> scheme or artifice—(1) to defraud a financial institution; or (2) to
> obtain any of the moneys, funds, credits, assets, securities, or other
> property owned by, or under the custody or control of, a financial
> institution, by means of false or fraudulent pretenses,
> representations, or promises."

*United States v. Vargas*, 629 F. App'x 415, 418 (3d Cir. 2015) (emphasis added) (quoting 18 U.S.C.

§ 1344).

More importantly, the Third Circuit has affirmed convictions charging defendants with the

same charge that Defendants face under Count 1. *See, e.g.*, *United States v. King*, No. 18-379, 2021

WL 3783157, at *1 (D.N.J. Aug. 24, 2021) (jury found defendant guilty on all counts, which

included *conspiracy to commit bank fraud* in violation 18 U.S.C. § 1349 and three counts of bank

fraud in violation of 18 U.S.C. § 1344), *aff'd sub nom.*, *United States v. Kusi*, No. 20-1095, 2021

WL 5505399 (3d Cir. Nov. 24, 2021); *United States v. Duncan*, No. 21-187, 2022 WL 1213466, at

*2 (D.N.J. Apr. 22, 2022) ("Defendant pleaded guilty to a charge of conspiracy to commit bank

fraud in violation of 18 U.S.C. §§ 1344 and 1349.").

As such, the Court finds Rabbitt's out-of-jurisdiction caselaw on other statutory contexts

unconvincing to find that Count 1 must be dismissed.

### b.     Materiality Element

Next, Rabbitt asserts that the Government fails to charge the materiality element of bank

fraud because "the word 'material'" is left out of Count 1. (Def.'s Moving Br. 7-8.) Rabbitt argues

that any references to "materially fraudulent applications" or "materially false statements" in the

Indictment are insufficient because "they appear in sections of the count that the [G]overnment is

not strictly required to prove." (*Id.* at 8.)

Indeed, the Supreme Court has held that although the term "material" is not explicitly included in the statutory language, "materiality of falsehood is an element of the federal . . . wire fraud[] and bank fraud statutes." *Neder v. United States*, 527 U.S. 1, 25 (1999). This is because "the word 'fraudulent' clearly encompasses the notion of materiality." *United States v. Stewart*, 151 F. Supp. 2d 572, 584 (E.D. Pa. 2001), *opinion corrected*, No. 96-583, 2007 WL 2032930 (E.D. Pa. July 12, 2007);[4] *see also United States v. Klein*, 476 F.3d 111, 113 (2d Cir. 2007), *as corrected* (Mar. 8, 2007) ("It is true that a bank fraud conviction requires a showing that the fraudulent conduct was material, *Neder*, 527 U.S. at 25, although the bank fraud statute does not contain that actual word. 18 U.S.C. § 1344." (cleaned up))).

Critically, however, Rabbitt's argument is meritless because courts have held that an indictment is not defective just because it does not use the exact word "material" in allegations of fraud, as long as there are specific allegations of misrepresentation in the indictment.[5] Here, the

---

[4] As aptly stated by a sister court,

> [t]he word "fraud" is a "legal term of art." *United States v. Cefaratti*, 221 F.3d 502, 507 (3d Cir. 2000). At common law, "the well-settled meaning of 'fraud' required a misrepresentation or concealment of *material* fact." *Neder*, 527 U.S. at 22; *see United States v. Coffman*, 94 F.3d 330, 335 (7th Cir. 1996).

*Stewart*, 151 F. Supp. 2d at 584 (cleaned up).

[5] *See, e.g.*, *Stewart*, 151 F. Supp. 2d at 583-84 (declining to find the superseding indictment to be "fatally deficient" based on defendant's argument that the word "material" is omitted because the superseding indictment properly mirrored the statutory language and "identifie[d] misrepresentations that can only be characterized as material even though the word "material" is not used."); *United States v. Solomon*, 273 F.3d 1108, *2 (5th Cir. 2001) ("[I]n determining sufficiency of an indictment, the law does not compel 'a ritual of words.' . . . Though the indictment did not contain the word 'materiality,' it did allege many specific material omissions and misrepresentations made by [defendant]." (citations omitted)); *c.f. United States v. Wecht*, No. 06-26, 2007 WL 3125096, at *5 (W.D. Pa. Oct. 24, 2007) ("Of course, materiality is an implicit element of honest services fraud under 18 U.S.C. §§ 1341, 1343 and 1346, but the failure of an indictment to allege materiality as an explicit element is not fatal to the indictment.").

Court finds that "by any reasonable construction, the [Indictment] identifies misrepresentations that can only be characterized as material . . . ." *Stewart*, 151 F. Supp. 2d at 584. Specifically, the Indictment alleges that Defendants submitted: (1) Payroll Protection Program ("PPP") applications that contained "numerous *materially false statements*" to financial institutions on behalf of several corporate entities formed, owned, and controlled by Rabbitt ("Borrower Companies"), and (2) "materially false documentation to support the *fraudulent* PPP applications." (Indictment ¶¶ 1, 4(b), (c) (emphasis added).) The Indictment further provides that "*[b]ased on the materially false statements and documentation* in the applications, [the financial institutions] approved several PPP loans . . . lending the Borrower Companies over approximately $3,300,000." (*Id.* ¶¶ 4(d), (e) (emphasis added).) In short, the Indictment alleges that the misrepresentations made by Defendants in and for the PPP applications were objectively important, relevant, and material in influencing the decision of the financial institutions to grant the loans. *See United States v. Santos*, No. 18-585, 2022 WL 1698171, at *3 (D.N.J. Mar. 22, 2022) ("A materially false statement has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.' . . . [C]ourts assess materiality through an objective lens." (citing *Neder*, 527 U.S. at 16)); *see also Klein*, 476 F.3d at 114 ("If materiality can be inferred to be an element of criminal fraud because of the well-understood meaning of 'fraud' as a legal term, an allegation of materiality can be inferred from use of the word fraud in the indictment."). In turn, the Court finds that the Indictment fully apprises Rabbitt of the charges against her and does not hinder her from presenting a vigorous defense in this matter. *See Rankin*, 870 F.2d at 112; *Stewart*, 151 F. Supp. 2d at 585 (finding the same because "[t]here can be no doubt that a reasonable person would attach importance to the [relevant] misrepresentations").

The Court, therefore, declines to dismiss Count 1 based on Rabbitt's argument that the Government failed to plead a "materiality" element.

### c.      Intent-to-Defraud Element

Finally, Rabbitt argues that Count 1 must be dismissed because "it fails to properly allege the specific intent to defraud required to prove a violation of [§] 1344(1)." (Def.'s Moving Br. 9.) Specifically, Rabbitt asserts that the Indictment "fails to allege that [Defendants] acted with the specific intent to defraud the financial institution." (*Id.* at 10.)

"[T]he *first* clause of § 1344 . . . includes the requirement that a defendant intend to 'defraud a financial institution.'" *Loughrin v. United States*, 573 U.S. 351, 357 (2014). "To act with an 'intent to defraud' means to act knowingly and with the intention or the purpose to deceive or to cheat." *United States v. Andrews*, 811 F. Supp. 2d 1158, 1171 (E.D. Pa. 2011) (citing Mod. Crim. Jury Instr. 6.18.1341-4)).

To the extent Rabbitt argues that the Indictment must be dismissed because it does not include a separate intent-to-defraud element, the argument fails. Here, the Indictment reads in relevant part, that Defendants "did knowingly and *intentionally* conspire . . . with each other . . . to execute and attempt to execute a scheme and artifice to *defraud* a financial institution . . . ." (Indictment ¶ 2.) In essence, the Indictment sufficiently "parrot[s] the language of [the relevant] federal criminal statute[s]"[6] and provides a general description of the offense charged. *Resendiz-Ponce*, 549 U.S. at 109; *compare* (Indictment ¶ 2), *with* 18 U.S.C. § 1349 ("Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same

---

[6] Rabbitt argues that the Indictment does not align with the Third Circuit Model Jury Instructions. (Def.'s Moving Br. 10-11; Def.'s Reply 5-7.) Importantly, however, Rabbitt fails to provide case law that requires an indictment to parallel model jury instructions, not just the language of the federal criminal statute.

penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."), *and* 18 U.S.C. § 1344 ("Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution . . . .").

Moreover, accepting the factual allegations in the Indictment as true, *Besmajian*, 910 F.2d at 1154, the Court finds that the statements of facts and circumstances as to Defendants' intent to defraud sufficiently inform Rabbitt of the accused offense charged. *Rankin*, 870 F.2d at 112; *Russell*, 369 U.S. at 765. In fact, there are multiple references to Defendants' intent to defraud the financial institutions to obtain approximately $3.3 million in PPP loans, including that: (1) Defendants "*agreed* to obtain multiple PPP loans from [the financial institutions] *based on false and fraudulent pretenses, representations, and promises*"; (2) Defendants "*submitted materially false documentation* to support the fraudulent PPP loan applications"; and (3) "To *conceal the fraud* . . . [Defendants] then transferred the [PPP] funds to [other] bank accounts that [Aguilar] had opened . . . to make it appear as if the Borrower Companies were using the funds for [] permissible purpose[s] . . . ." (Indictment ¶¶ 4(a), (c), (g) (emphasis added).) *See United States v. Berdize*, 415 F. App'x 320, 326 (2d Cir. 2011) ("Both the existence of a conspiracy and a defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence, provided it is sufficient to prove these elements beyond a reasonable doubt.").

The Court, accordingly, denies Rabbitt's motion to dismiss Count 1.[7]

---

[7] Rabbitt argues—by adopting the same reasoning for the dismissal of Count 1—that Counts 2 through 8, charging bank fraud and attempted bank fraud, should be dismissed because the Counts also fail to charge the intent-to-defraud element. (Def.'s Moving Br. 10-11.) For the same aforementioned reasons, the Court denies Rabbitt's "intent-to-defraud" argument as to Counts 2 through 8.

###### 3.      *Motion to Dismiss Counts 9 and 13*

Next, Rabbitt argues that Count 9 (conspiracy to commit wire fraud) and Count 13 (conspiracy to engage in monetary transactions in criminally derived property) of the Indictment should be dismissed because they fail to state a cognizable offense. (Def.'s Moving Br. 11-12.)

###### a.      **Count 9**

As to Count 9, Rabbitt argues that "conspiracy to attempt wire fraud is not a federal offense," because "the wire fraud statute does not reference attempts at all." (*Id.* at 11.) As such, Rabbitt argues that the Indictment should have charged Defendants with "conspiracy to violate [§] 1343 by committing *completed* wire fraud." (*Id.*) For the same reasons the Court denied Rabbitt's motion to dismiss Count 1, the Court denies Rabbitt's motion to dismiss Count 9.

"Conspiracy to commit wire fraud is prohibited by 18 U.S.C. § 1349." *United States v. Vargas*, 629 F. App'x 415, 417 (3d Cir. 2015). Wire fraud, 18 U.S.C. § 1343, requires the Government to establish beyond a reasonable doubt: "(1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of . . . wire transmissions in furtherance of the scheme." *Id.* (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012)).

The Court first notes that Count 9 sufficiently parrots the statutory language. *Compare* (Indictment ¶ 8 (charging Defendants with "knowingly and intentionally conspir[ing] with each other and others to devise a scheme and artifice to defraud the [U.S. Small Business Administration ("SBA")] and others . . . .")), *with* 18 U.S.C. § 1343 and § 1349. Further, reading the Indictment as a whole and in a common sense manner, *Lee*, 359 F.3d at 209, Defendants are charged with *succeeding* in their conspiracy to commit wire fraud, not with *attempt* to conspire or *attempt* to commit wire fraud. (Indictment ¶¶ 7-10.) Indeed, the Indictment alleges that "[b]ased on the

10

materially false information that [Defendants] included in the [Economic Injury Disaster Loans ("EIDL")] applications, . . . the SBA provided over approximately $445,000 in EIDLs to the Borrower Companies, which [Defendants] then diverted to their own use." (Indictment ¶¶ 10(d), (h).) As to the last element of wire fraud, the Indictment alleges that "[a]t least one of the EIDL applications that [Defendants] submitted to the SBA was sent by interstate wire . . . ." (*Id.* at ¶ 10(b).)

The Court, therefore, denies Rabbitt's motion to dismiss Count 9.

### b.      Count 13

As to Count 13, Rabbitt argues that the Indictment improperly charges "conspiracy to *attempt* to engage in monetary transactions in criminal deprived property" because it is not a cognizable offense. (Def.'s Moving Br. 11-12.)

For the same reasons stated regarding Counts 1 and 9, the Court reaches the same conclusion for Count 13. First, the Court finds that Count 13 sufficiently parrots the statutory language, which includes the word "attempt." *Compare* (Indictment ¶ 14), *with* 18 U.S.C. §§ 1956(h) and 1957. Second, reading the Indictment as a whole and in a common sense manner, *Lee*, 359 F.3d at 209, Defendants are charged with *succeeding* in their conspiracy to commit money laundering. In short, the factual allegations state that Defendants deposited the $3.3 million obtained through PPP loans into the respective Borrower Companies' bank accounts, which were then transferred generally by paper checks to several corporate entities,[8] that Aguilar opened and controlled, to make it seem as though Borrower Companies were legitimately using their PPP loans for business activities. (Indictment ¶ 16(c).) Thereafter, the Indictment states that "Aguilar

---

[8] The Indictment refers to the corporate entities as "Sham Payroll Companies." (Indictment 1(d).) For the purposes of the instant omnibus motion, the Court will refer to them as "corporate entities."

transferred at least approximately $2.3 million from bank accounts [of the corporate entities]. . ." to other bank accounts; "[Defendants] [then] used the funds to pay their personal expenses." (*Id.* at ¶ 16(f))

The Court, accordingly, denies Rabbitt's motion to dismiss Count 13.

**B.     Motion to Sever Trial**

Rabbitt moves to sever trial from Aguilar's on the ground that "a joint trial would result in the presentation of mutually antagonistic defenses, creating confusion with the jury and requiring [Rabbitt] and [Aguilar] to defend not only the [G]overnment's allegations but also each other's." (Def.'s Moving Br. 12-15.) Rabbitt also argues that a "joint trial could potentially violate [her] due process rights" because she will be prevented from calling Aguilar as a witness. (*Id.* at 15-18.)

*1.     Legal Standard*

Federal Rule of Criminal Procedure 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). Relatedly, the Supreme Court maintains "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (finding that joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." (internal quotations and citations omitted)).

At the same time, however, "Rule 14[9] recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government," such as if "mutually antagonistic" or "irreconcilable" defenses are so prejudicial as to mandate severance. *Id.* at 538. As such, the Supreme Court has held that "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539 ("[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." (citation omitted)).

"Rule [14] places the burden of showing prejudice from the joinder on the defendant seeking severance." *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (citing *United States v. De Peri*, 778 F.2d 963, 983 (3d Cir.1985), *cert. denied*, 475 U.S. 1110 (1986)). Notably, "[m]otions for severance rest in the sound discretion of the trial judge." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) (citing *United States v. Boyd*, 595 F.2d 120, 125 (3d Cir. 1978)); *see Zafiro*, 506 U.S. at 539 ("The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in [various] situations").

### 2.      *Mutually Antagonistic Defenses*

Courts generally agree that "[m]utually exclusive defenses . . . exist when acquittal of one co[-]defendant would necessarily call for the conviction of the other," such as "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citations omitted). "In determining whether mutually antagonistic

---

[9] Rule 14 provides: "If it appears that a defendant or the [G]overnment is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed. R. Crim. P. 14(a).

defenses exist such that severance may be required, the court must ascertain whether 'the jury could reasonably construct a sequence of events that accommodates the essence of all [defendant's] defenses.'" *Id.* "Courts have consistently held that finger-pointing and blame-shifting among co[-]conspirators do not support a finding of mutually antagonistic defenses." *Id.* at 1095; *Reicherter*, 647 F.2d at 400 (citations omitted) ("Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal.").

Here, Rabbitt asserts that "a joint trial would *likely* lead to the presentation of defenses that are truly antagonistic and cannot be mutually accommodated." (Def.'s Moving Br. 14 (emphasis added).) Rabbitt does not present any potential defenses and instead states that "discovery includes multiple recordings of [Aguilar] impersonating [Rabbitt]." (*Id.*) In turn, Rabbitt argues that a finding that she did not participate in the alleged conduct will "necessarily require a finding of guilt as to [Aguilar]." (*Id.*) Rabbitt, however, fails to provide any specific factual allegations to support that such an outcome is inevitable. To the contrary, it is possible that a jury could accept Rabbitt's defense without concluding that Aguilar is guilty. *See Voigt*, 89 F.3d at 1095 ("Far more frequently, courts have concluded that the asserted defenses, while in conflict with one another, are not so irreconcilable that '[t]he jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis.'" (citation omitted)); *see also United States v. Flanagan*, 34 F.3d 949, 952 (10th Cir. 1994) (affirming denial of motion to sever because a jury "could logically" accept one defendant's defense without concluding that the co-defendant was guilty, and vice versa). Without more, Rabbitt falls short of demonstrating "clear and substantial prejudice [that will result] in a manifestly unfair trial" should her severance motion be denied. *Reicherter*, 647 F.2d at 400 (citations omitted) (affirming the trial judge's decision to deny

defendant's motion for severance because the "[d]efendant pinpoints no specific instances of prejudice."); *see Zafiro*, 506 U.S. at 539-40 (finding that denial of defendants' severance motions was proper because defendants "d[id] not articulate any specific instances of prejudice. Instead they contend[ed] that the very nature of their defenses, without more, prejudiced them.").

In short, Rabbitt fails to carry her burden to demonstrate that mutually antagonistic or irreconcilable defenses are so prejudicial to warrant severance in this case.

### 3.   *Calling Co-Defendant as a Witness*

The Third Circuit provides that four factors are to be considered "in determining whether the Court should grant a severance on the ground that a joint trial would deprive the movant of the ability to call a co[-]defendant as a defense witness:" *United States v. Kozell*, 468 F. Supp. 746, 748 (E.D. Pa. 1979) (*United States v. Boscia*, 573 F.2d 827, 832 (3d Cir. 1978)). The factors are: "(1) the likelihood of co-defendant's testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendants could be impeached; [and] (4) judicial economy." *Boscia*, 573 F.2d at 832. "More than the showing of a possibility that a co-defendant will testify is required." *United States v. Vastola*, 670 F. Supp. 1244, 1264 (D.N.J. 1987) (citing *United States v. Provenzano*, 688 F.2d 194, 198 (3d Cir. 1982)).

As to the first factor, Rabbitt fails to demonstrate (or even address) that there is "more than the showing of possibility," *Vastola*, 670 F. Supp. at 1264, or likelihood that Aguilar would testify, even if their cases were severed. Instead, Rabbitt focuses on an alternative, speculative scenario in which "[she] *may* find it necessary to call [Aguilar] as a witness" and "compel his testimony *if necessary*" because such "testimony *could be* critical to [Rabbitt]'s defense . . . ." (Def.'s Moving Br. 15-16 (emphasis added).) She then asserts that she "*could move* the Court to compel the [G]overnment to grant [Aguilar] testimonial immunity *if necessary* to protect [Rabbitt's] due

process rights." (*Id.* at 16 (emphasis added).) In essence, Rabbit has "not made a strong showing of the likelihood that [her] co-defendant[] [will] testify." *Boscia*, 573 F.2d at 832.[10] Without more, the Court finds it inappropriate to sever based on such speculative and hypothetical events. *See Vastola*, 670 F. Supp. at 1264 ("The motion is not supported by [co-defendant] affidavits and the court finds that it would be highly speculative to sever on the basis of such limited information.").

Critically, Rabbitt also overlooks the fact that "[she] would be unable to compel testimony from a co[-]defendant even if their cases were severed [because] [t]he constitutional right of a defendant not to testify at the behest of a co[-]defendant remains his right despite the severance of their trials." *United States v. Somers*, 496 F.2d 723, 731 (3d Cir. 1974) (quoting *United States v. Barber*, 442 F.2d 517, 529 n.22 (3d Cir. 1971)) (finding denial of defendant's severance motion was proper because defendant "made no showing that [co-defendant] would have testified voluntarily in [defendant's] case had the defendants been severed."); *see Barber*, 442 F.2d at 529 ("[A] defendant may not compel another defendant to take the stand" (citing *United States v. Hous. Found. of Am.*, 176 F.2d 665 (3d Cir. 1949))).

Regarding the second and third factor, Rabbitt's moving brief lacks any support to demonstrate the degree to which Aguilar's testimony would be exculpatory or to which Aguilar could be impeached. *See Barber*, 442 F.2d at 530 ("[T]he mere presence of hostility among

---

[10] *See, e.g.*, *Kozell*, 468 F. Supp. at 748 (denying defendant's motion for severance because "[w]hile it is not necessary that [defendant] show that [co-defendant] is 'certain' to testify at a later trial, *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965), we find that [defendant] has not shown that [co-defendant] is 'likely' to testify due to the various conditions he has placed on his willingness to testify."); *United States v. Finkelstein*, 526 F.2d 517, 524 (2d Cir. 1975) *cert. denied*, 425 U.S. 960 (1976) (denying severance even though a co-defendant signed an affidavit stating that he would testify for appellant because it was "unrealistic" to believe that the co-defendant would not invoke his Fifth Amendment privilege).

defendants or the desire of one to exculpate h[er]self by inculpating another have both been held to be insufficient grounds to require separate trials.").

As to the fourth factor, Rabbitt's arguments are weak at best. "[C]onsiderations of judicial economy weigh heavily against separate trials." *Boscia*, 573 F.2d at 833 ("[W]here there is a reasonable assurance that defendants will be given a fair trial regardless of whether a severance is granted, judicial economy becomes a relevant factor."). With the exception of Counts 14, 15 and 17, Defendants are charged on all counts together (*see* Indictment) and thus a separate trial will unnecessarily require a substantial amount of evidence (including testifying witnesses) to be presented twice. *See Eufrasio*, 935 F.2d at 569 (affirming the trial court's decision to deny severance of trial "[b]ecause there would have been substantial overlap in the evidence presented in separate trials"). Further, Rabbitt fails to demonstrate why jury instructions cannot remedy any potential prejudice against Rabbitt and Aguilar being tried together. *See Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice." (citations omitted)). At this juncture, the Court finds no reason to doubt that a jury will be able to "compartmentalize the evidence as it relates to separate defendants." *See Somers*, 496 F.2d at 730 (quoting *United States v. De Larosa*, 450 F.2d 1057, 1065 (3d Cir. 1971), *cert. denied*, *Bashen v. United States*, 405 U.S. 927 (1972)).

In sum, the Court finds that Rabbitt fails to satisfy her burden in demonstrating that severance of her trial from the trial of Aguilar's is warranted. Rabbitt's motion to sever trial is denied.

C.      **Motion to Compel Unredacted Copies of Already Produced Discovery or a Privilege Log of the Same**

Next, Rabbitt moves to compel the Government to provide an unredacted version of a recorded statement made by an individual who is "allegedly the victim of identity theft under 18 U.S.C. 1028A." (Def.'s Moving Br. 18.) Rabbitt states that in the recorded statement, the individual states her personal identifying information—including "her name, social security number, date of birth," "bank account numbers, and other financial information"—which are integral to the allegations of identity theft. (*Id.*) Further, Rabbitt flags that additional redactions have been identified in at least 67 documents produced as part of discovery in this matter, but for which no redaction log has been provided. (*Id.*) Rabbitt, accordingly, requests that the Court compel the Government to provide either: (1) "unredacted copies of all documents which contain redactions including the 67 documents" and "identify if exact copies of the listed documents have been produced elsewhere in the discovery and if so where"; or (2) "a privilege log for those documents so that their production may be litigated, if necessary." (*Id.* at 19.)

The Government argues that Rabbitt's motion to compel is misguided and premature. First, the Government asserts that the recorded statement only redacted "the victim's date of birth, social security number, home address, and driver's license number," which is not integral to Rabbitt's defense. (Gov't's Opp'n Br. 27-28.) Second, the Government asserts that redactions were made to Jencks material—such as those pertaining to a witnesses' personal identifying information, an agency's case file number, or an agent's phone number—which are "limited, self-explanatory, and irrelevant to any charges or defenses in this action." (*Id.* at 28.) Additionally, the Government asserts that redactions were made to select irrelevant material in Rule 16 documents because they are not: (1) "material to preparing the defense"; (2) "not intended to be used in the [G]overnment's

'case in chief'"; and (3) were not "obtained from or belong[ing] to the defendant." (*Id.* at 29 (quoting Fed. R. Crim. P. 16(a)(1)(E)).)

Here, the Court will compel the Government to make the necessary productions or alternatively produce a privilege log. While the Court acknowledges that a defendant is not entitled to "all the minutia of [the prosecution's] evidence," the Third Circuit has recognized that "certain demands for evidentiary material may be within bounds of permissible discovery." *United States v. Fioravanti*, 412 F.2d 407, 411 & n.10 (3d Cir. 1969) (the government must "not frustrate the defense in the preparation of its case."). In the instant matter, the Court finds that there is "persuasive basis" for compelling the disclosure of personal identifying information pertaining to the alleged victim of identity theft—namely, Rabbitt avers that personal identifying information is integral to the identity theft charge. *See United States v. Hull*, No. 21-39, 2023 WL 8005251, at *9 (W.D. Pa. Nov. 17, 2023) (denying defendant's request for the identity and addresses of all persons interviewed by the government on the basis that they "could *possibly* possess" helpful information because there was a lack of compelling circumstances and such information was already covered by the government's *Brady* disclosures); *see also Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) ("A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined"). Further, any privacy concerns regarding personal identifying information in the recorded statement (of the alleged victim) or Jencks material (of one or more witnesses) are adequately addressed by the Stipulated Protective Order that is in place. *See, e.g., Jane G.A. v. Rodriguez*, No. 20-5922, 2021 WL 2530849, at *2 (D.N.J. Mar. 11, 2021); *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *11

(D.N.J. June 30, 2020) ("[A]ny concerns about . . . privacy exposure are easily assuaged through implementation of an appropriate protective order.").

As to the Government's assertions that certain material is not relevant or material to preparing the defense,[11] the Court finds the argument unpersuasive at this juncture. Without a privilege log, it is unclear as to what material was redacted and thus the Court has no means to evaluate the relevancy or materiality of the redactions. Notably, Rule 16(a)(1)(E) does not allow the Government to make ad hoc redactions as it sees best fit, nor has the Government demonstrated that the relevant materials are exempt from discovery and inspection, especially when the Government has already turned over Jencks materials. *See* Fed. R. Crim. P. 16(a)(1)(E);[12] *Coles*, 511 F. Supp. 3d at 574 (stating only that "the rule exempts government work product. . . . [and] the statements of prospective government witnesses, except as provided in the Jencks Act" from discovery and inspection).

The Court, accordingly, grants Rabbitt's motion to compel.

**D.      Request for *Brady* Material in Advance of Trial**

Next, Rabbitt requests that the Government be compelled to produce exculpatory evidence as well as evidence that could be used for impeachment purposes. (Def.'s Moving Br. 19-22.) The Government states that it is "well aware of its obligations under *Brady*, which requires the

---

[11] To be clear, the Court does not compel the Government to produce materials: (1) not intended to be used in its case in chief at trial, or (2) not obtained from Defendants.

[12] Rule 16(a)(1)(E)(i) provides that *"[u]pon a defendant's request*, the government must permit the defendant to inspect [relevant materials] if the item is within the government's possession, custody, or control and the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added); *see also United States v. Hertel & Brown Physical & Aquatic Therapy*, No. 21-39, 2024 WL 2819301, at *2 (W.D. Pa. June 3, 2024) (Rule 16 "establishes six categories of information that the [G]overnment must produce to an individual defendant '[u]pon . . . request.' . . . "Rule 16(a)(1)(E) is the broadest provision" (citing *United States v. Coles*, 511 F. Supp. 3d 566, 574 (M.D. Pa. 2021))).

Government to turn over [relevant evidence] at the earliest possible time.[13] (Gov't's Opp'n Br. 30.) As such, the Government contends that it will promptly disclose any exculpatory material and will also disclose *Giglio* material at the appropriate time. (*Id.* at 30.)

The Court, accordingly, finds Rabbitt's request to be moot.

### E.   Request to File Additional Motions or Join Co-Defendant's Motions as Necessary

Lastly, the Court turns to Rabbitt's request that she be granted the right to file additional motions and be permitted to join in any and all motions filed by Aguilar. (Def.'s Moving Br. 22.) The Government argues that Rabbitt's request is premature and that she should be required to seek leave of Court before filing such additional pretrial motions. (Gov't's Opp'n Br. 30.)

Should Defendants or the Government seek to file any additional motions, the respective party is directed to immediately seek leave of Court and provide good cause as to why filing of the respective motion should be granted. The Court will consider the request at that time. As such, the Court reserves on Rabbitt's request and will further consider Rabbitt's request to join motions of Aguilar at the appropriate time.

### III.   CONCLUSION

For the reasons set forth above, Rabbitt's omnibus motion is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[13] Moreover, the Court's scheduling order requires the Government to provide all materials to be disclosed under *Giglio* and the Jencks Act on or before September 24, 2024. (Scheduling Order ¶ 8, ECF No. 56.)